# IN THE COURT OF APPEALS OF IOWA

No. 23-1397
Filed January 23, 2025

**DONNIE PAUL BRADLEY and MELANIE YVONNE BRADLEY,**
Plaintiffs-Appellants,

**vs.**

**ALLSTATE INSURANCE COMPANY,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Justin Lightfoot (summary judgment) and Kevin McKeever (final judgment), Judges.

Homeowners appeal from the district court's denial of their breach-of-contract, consequential-damages, and bad-faith claims. **AFFIRMED.**

James C. Larew and Claire M. Diallo of Larew Law Office, Iowa City, for appellants.

Edmund E. Talbot III of Talbot Law Office, Blair, Nebraska, and Ellen J. Brooke of Rynearson Suess Schnurbusch & Champion, LLC, St. Louis, Missouri, for appellee.

Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Donnie and Melanie Bradley appeal from the district court's summary judgment ruling and final judgment following contractual disputes against Allstate Insurance Company (Allstate). On appeal, the Bradleys allege the district court erred in its interpretation of the insurance policy for the breach-of-contract claim and by granting summary judgment to Allstate on the Bradleys' consequential-damages and bad-faith claims. We affirm.

## I.      Background Facts and Proceedings

The Bradleys purchased an Allstate insurance policy in 2014 to cover their Cedar Rapids home. Coverage included the actual cash value (ACV) of repairs, which is the replacement cost value (RCV) with a deduction for depreciation. Additional RCV coverage for the full replacement cost was available above the ACV if the Bradleys made timely repairs following a covered loss. In the aftermath of the August 2020 derecho windstorm, the Bradleys were left with significant interior and exterior damage to their home from trees falling onto the home, water damage from rainwater seeping in through new holes in the roof, and damage to the siding, deck, fencing, and power lines around the home. The Bradleys immediately reported the damage to Allstate, and there was no debate the losses were covered under the policy. Allstate's internal notes described the damage as a "potential large loss" given that a "tree started to go through [the] roof into [the] kitchen" and that the tree would need to be removed before the initial damage inspection.

Adjusters were assigned to the claim and performed the initial inspection. An appraiser prepared an itemized estimate for ACV and RCV repairs

approximately one week after the damage occurred. Partial payment was issued after the Bradleys expressed no concerns about the estimate. An additional payment was made for food replacement as the Bradleys had no electricity for two weeks.

The Bradleys remained in contact with various Allstate representatives regarding further water damage from subsequent storms, air conditioning problems, and receipts for other damaged property. They experienced communication delays with the various adjusters in part due to the repeated turnover of personnel working on their claims. And they submitted various competing estimates to Allstate for interior and exterior repair costs and tree-removal expenses. Another Allstate adjuster performed a supplemental inspection of the property after receipt of the Bradleys' final estimate. Allstate then paid the remaining ACV to the Bradleys, but there was still a difference between the Bradleys' and Allstate's estimates. These discrepancies generally stemmed from differences in replacing or repairing certain aspects of the home, like the wet carpets, drywall, and built-in bookshelves.

The Bradleys demanded appraisal in November 2020 as the parties could not agree on the value or scope of repairs. And the Bradleys filed this lawsuit in August 2021, before the one-year limitation outlined in the insurance policy. The Bradleys claimed breach of contract for Allstate denying RCV coverage, alleged bad faith, and demanded consequential and punitive damages. They also sought declaratory judgment and injunctive relief to appoint an umpire for appraisal.

The parties signed an appraisal for the ACV in September 2021, and Allstate paid the Bradleys in accordance with the insurance policy. But the

Bradleys spent more on repairs than Allstate paid out and they continued with litigation. The Bradleys ultimately paid for the repairs by refinancing their home to establish a home equity line of credit and taking out a loan against a retirement account. Allstate was to reimburse the Bradleys for repair costs in excess of ACV—the equivalent of the RCV—if repairs were completed within 180 days of the ACV payment.

The Bradleys filed a motion for partial summary judgment, which the district court denied "without prejudice to refiling after further discovery, if necessary."

Allstate then filed a motion for summary judgment on all claims. The court granted the motion with regard to the consequential damages and bad-faith claims but denied summary judgment for the breach-of-contract claim, finding a material dispute as to whether the Bradleys timely completed repairs under the policy. The Bradleys withdrew their request for a jury trial because the only dispute was approximately $13,000 in RCV payments. And Allstate eventually paid the RCV from the appraisal to the Bradleys. The Bradleys moved for final judgment and to cancel the bench trial, but the district court dismissed the case as moot and was not persuaded any new evidence or summary judgment motion was necessary to properly dispose of the case because both parties agreed the only remaining issue held over for trial was resolved. The Bradleys appeal.

## II. Standard of Review

"We use the errors at law standard when our decision rests upon the interpretation of an insurance policy." *Boelman v. Grinnell Mut. Reins.*, 826 N.W.2d 494, 500 (Iowa 2013). And we review a summary judgment ruling for correction of errors at law. *Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942

N.W.2d 333, 336 (Iowa 2020). Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

### III. Discussion

On appeal, the Bradleys argue the district court erred by denying their motion for judgment that the full appraisal award was due within sixty days of issuance, denying consequential damages, and granting summary judgment on the bad-faith claim. We address each in turn.

### A. Appraisal-Award Due Date

The Bradleys' first claim is that Allstate breached the insurance contract by violating the plain meaning of the policy's appraisal language—consistent with the standard policy established in Iowa Code section 515.109(6) (2021)—by not paying the appraisal award within sixty days and distinguishing between ACV and RCV. And they allege the district court erred in denying their motion for partial summary judgment on this basis by finding the appraisal-award RCV payment obligation was ambiguous and granting more time for discovery rather than deciding the claim then. Allstate argues the issue is not properly preserved and moot.

Mootness is a "threshold question." *Vasquez v. Iowa Dep't of Hum. Servs.*, 990 N.W.2d 661, 667 (Iowa 2023). "The key in assessing whether an appeal is moot is determining whether the opinion would be of force or effect in the underlying controversy." *State v. Avalos Valdez*, 934 N.W.2d 585, 589 (Iowa 2019) (citation omitted).

After examining the record and recognizing both parties on appeal agree the claim is moot because Allstate paid the remaining RCV payments, we decline to address the merits. We recognize there are a few fleeting remarks in the Bradleys' briefing that assert they can avoid mootness, suggesting we "focus on the initial error of the district court" in not ruling on the breach-of-contract claim "when it was ripe." And they point to the public-importance exception, which allows us to sometimes reach moot issues when they are "of broad public importance likely to recur." *In re B.B.*, 826 N.W.2d 425, 428–29 (Iowa 2013). While we understand it was important to the Bradleys they be timely paid, and we agree there is a generalized public interest in timely insurance payments, the Bradleys' assertions—unaccompanied by well-pleaded or proven facts suggesting systemic problems—are insufficient to bypass the general barrier to review of moot claims. *See Vasquez*, 990 N.W.2d at 668 (declining to apply mootness exceptions in part due to "inadequate" record).

The Bradleys do not clearly assert any separate damages for this claim beyond generally seeking "several smaller receipts" the district court did not see in its RCV analysis and costs "to hire experts and pay additional amounts to obtain loss estimates." The timeliness of payment is not "a real live controversy" for our review because the Bradleys received payment from Allstate—though admittedly not when they wanted. The receipt of full payment "deprives the court of the ability to provide the parties with a remedy." *Irving v. Emp. Appeal Bd.*, 883 N.W.2d 179, 187 (Iowa 2016). With no live controversy to decide on this issue, we decline to rule on the appraisal-award due date.

### B. Consequential Damages

The Bradleys next allege the district court erred when it concluded the "Iowa Supreme Court has indicated its belief that consequential damages are not available for willful failure to pay claims." They allege error in four ways, asserting the district court ignored the Bradleys "were seeking consequential damages pursuant to the breach-of-contract claim"; *Brown Township Mutual Insurance Ass'n v. Kress*, 330 N.W.2d 291 (Iowa 1983), is no longer good law; *Brown* recognizes consequential damages; and that the Iowa Supreme Court recognizes consequential damages could be available in a breach of an insurance contract.

While acknowledging consequential damages for willful failure to pay claims is available in some jurisdictions, our supreme court in *Brown* quoted with approval that:

> general . . . damages, in an action for breach of a contract to pay a sum of money, and in the absence of special circumstances in the contemplation of the parties at the time of the making of the contract, is the principal sum agreed to be paid by the terms of the contract, with legal interest thereon, it has been held that consequential damages, resulting from the failure or delay of an insurer in making payments due under an insurance contract are, as a general proposition, and without regard to any special circumstances indicating that such damages were within the contemplation of the parties, not recoverable, limiting recovery for such breach of contract to the amount due under the policy, with interest.

330 N.W.2d at 298 (citation omitted). And *Brown* remains good law, even though it was decided five years before our supreme court recognized a first-party bad-faith claim in *Dolan v. Aid Insurance Co.*, 431 N.W.2d 790, 794 (Iowa 1988). The Eighth Circuit recently interpreted a similar issue and opined: "[W]e do not think the Iowa Supreme Court's later recognition of a cause of action for bad faith expanded the available damages for ordinary breach of an insurance contract."

*Henderson v. State Farm Fire & Cas. Co.*, 113 F.4th 1042, 1055 (8th Cir. 2024). We agree with the Eighth Circuit's assessment.

Under Iowa law, consequential damages are unavailable for any of the Bradleys' claims. They cannot demonstrate any "special circumstances in the contemplation of the parties" when the insurance contract was entered into in 2014. *Brown*, 330 N.W.2d at 298. And the district court did not err in denying consequential damages.

## C. Bad Faith

The Bradleys last argue the district court incorrectly granted Allstate's motion for summary judgment because Allstate is liable for bad faith because of the delays and denials of loss indemnification after the appraisal award was issued and the RCV payment became due.

A prima facie case for bad-faith denial of insurance claims has two elements: "(1) absence of a reasonable basis for denying the claim (an objective standard), and (2) the insurer knew or had reason to know its denial was without a reasonable basis (a subjective standard)." *Luigi's, Inc. v. United Fire & Cas. Co.*, 959 N.W.2d 401, 408 (Iowa 2021). For the first element, a "reasonable basis" means that "the insured's claim is fairly debatable either on a matter of fact or law." *Bellville v. Farm Bureau Mut. Ins.*, 702 N.W.2d 468, 473 (Iowa 2005). The second element may include a sub-par or negligent investigation of the claim from the insurer. *Id.* at 474. And the party claiming bad faith must negate any plausible reasonable basis for the denial or delay. *Luigi's, Inc.*, 959 N.W.2d at 409.

We agree with the district court there was no genuine issue of material fact that precluded summary judgment regarding the bad-faith claim. The district court ruled:

> The question of whether [the Bradleys] are entitled to RCV payments is fairly debatable as a matter of law. The Court has already concluded that the undisputed facts establish that there was no unreasonable delay in the ACV payment. Regarding the RCV payments, [Allstate] has disputed coverage on the basis that the explicit terms of the policy require repair to be completed for an RCV payment to be made, and the question of whether repairs were timely completed is a claim that is open to dispute on a logical basis. Indeed, even when viewing the evidence in the light most favorable to [the Bradleys], the record is, at best, unclear whether repairs were completed in a timely manner. Reasonable minds could differ on this issue. For example, the estimates provided by [Allstate] were supported by detailed costs of repairing specific square footage of damaged areas. . . . On the other side, [the Bradleys] did not provide such specific itemizations of their estimates. Reasonable minds could draw different inferences and reach different conclusions with regard to the RCV payments, and [the Bradleys] have not negated any reasonable basis for [Allstate's] denial or delay. The claim is fairly debatable and [the Bradleys] cannot succeed on their bad faith claim.

We adopt this reasoning as our own. We also note that while delays in receiving funds, working with multiple adjustors, and the financial burden to pay for repairs before reimbursement were understandably frustrating for the Bradleys, a bad-faith claim requires more. The Bradleys did not set forth a facially valid bad-faith claim, and the district court properly granted summary judgment.

## IV.    Disposition

We affirm, finding the district court did not err in its summary judgment rulings or in dismissing the case.

**AFFIRMED.**